**SO ORDERED.**

**SIGNED September 6, 2018.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

HARVEST OIL & GAS, LLC, ET AL,                CASE NO. 15-50748

    Debtor in Possession
------------------------------------------------------------------
JASON R. SEARCY, TRUSTEE OF THE
SARATOGA LIQUIDATING TRUST,

    Plaintiff

VERSUS                                        ADVERSARY CASE NO. 17-05039

COLLARINI ENGINEERING, INC.,

    Defendant
------------------------------------------------------------------
REASONS FOR DECISION
------------------------------------------------------------------

    This case involves fraudulent transfer and preference claims brought by Jason R. Searcy, Trustee of the Saratoga Liquidating Trust (the "Trustee") against Collarini Engineering, Inc. ("Collarini"). The court took the matter under advisement

following a trial on the merits.  The court now rules as follows.

**JURISDICTION**

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana.  No party in interest has requested a withdrawal of the reference.  The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under Stern v. Marshall, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). See First Choice Drywall, Inc. v. Presbitero (In re First Choice Drywall, Inc.), 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after Stern ); Olsen v. PG Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.), 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.), 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); Appalachian Fuels, LLC v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744 (E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773 (Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr.

-2-

S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.), 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).  The following Reasons for Decision shall constitute the court's findings of facts and conclusions of law.

**BACKGROUND**

The debtor in this case was an independent oil and gas exploration and production company.  Collarini provided engineering services to the debtor for over ten years.  During the period at issue, the parties operated under a Master Service Agreement (Trial Exhibit ("Tr. Exh.") No. 8).  The evidence at trial focused on the parties' relationship from January 2011 through debtor's bankruptcy filing on June 18, 2015.  During this period, Collarini provided services pursuant to six (6) work orders and received payments on 29 invoices issued under the work orders.  The Trustee challenges two of the payments made within the 90 day "preference period" prior to the petition date:  $39,960.00 made on February 28, 2015, and $13,538.00 on March 31, 2015.  The Trustee filed a complaint seeking to avoid these transfers under 11 U.S.C. §§ 547, 548, 549 and 550.  The court granted the Trustee's motion for summary judgment, concluding that there were no genuine disputes as to any material facts supporting each required element of the Trustee's section 547 preference claim.  The trial on the merits focused on Collarini's defenses to the Trustee's preference claim.

-3-

**DISCUSSION**

**A. The Ordinary Course Defense.**

The court begins with Collarini's "ordinary course" defense. Section 547(c)(2) provides that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so Adriatic has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). Based on the trial record, there is no genuine dispute that the debts reflected by the challenged invoices were *incurred* in the ordinary course. Rather, the dispute centers on whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). In re SGM Acquisition Co. LLC, 439 F3d 233, 239 (5th Cir. 2006).

-4-

The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." Lightfoot v. Amelia Maritime Services, Inc., (In re Seabridge Marine, Inc.), 412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. See Kleven v. Household Bank F.S.B., 334 F. 3d 638, 642 (7th Cir. 2003); In re Quad Systems Corp., 2003 WL 25947345 at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. In re Accessair, Inc., 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged preference-period transfer falls within the normal pattern of payment practices between the parties during the pre-preference period. Id. Section 547(c)(2) provides that an otherwise avoidable

-5-

transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms ....

11 U.S.C. § 547(c)(2).

Turning to the trial record, Collarini performed work for Saratoga pursuant to work orders issued under the aegis of a Master Service Agreement. From January 2011 through June 18, 2015 (the petition date) seven (7) work orders were issued and 29 invoices were issued and paid pursuant to those work orders, including the two invoices paid during the preference period. (Tr. Exh. No. 7). The average time for payment of invoices issued pursuant to each work order *prior to the preference period* ranged from 18 days to 32 days. (Id.). The payment times for each individual invoice paid prior to the preference period ranged from 14 days to 55 days. (Id.). The *amounts* paid on the pre-preference period invoices ranged from $218.32 to $62,668.28. The two challenged invoices – February 28, 2015 and March 31, 2015 – were paid 34 days and 31 days, respectively, after the invoices were issued. (Id.). The

-6-

amounts of the challenged invoices are $39,960.00 and $13,583.00, respectively. (Id.). The court finds that the payment times of the challenged invoices and the amounts paid fall within the normal pattern of payment practices between the parties during the pre-preference period. The 31 day period for the March 31st invoice falls with the average invoice range of 18 to 32 days. The 34 days for the February 28th payment slightly exceeds the averages, but fall squarely in the middle of the range of individual invoices: 14 days to 55 days. The amounts of the challenged invoices also falls squarely within the range of invoices issued during the pre-preference period. Moreover, there is no evidence in the record of extraordinary or unusual collection activities. The court finds, therefore, that the two challenged payments were made in the ordinary course of business within the meaning of section 547(c)(2). In light of this finding, the court need not address the "objective" prong of section 547(c)(2).

**B. The "New Value" and "Contemporaneous Exchange" Defenses.**

Collarini also asserts the "new value" defense of 11 U.S.C. § 547(c)(4) and the "contemporaneous exchange" defense of 11 U.S.C. § 547(c)(1). Section 547(c)(4) provides an exception for transfers "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor – (A) not secured by an otherwise unavoidable

-7-

security interest; and(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." "New value" is defined as "money or money's worth and goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under applicable law...." 11 U.S.C. § 547(a)(2). In other words, a creditor must establish that it provided the debtor with "something new that is of tangible value." In re Martin Wright Electric Co., 2008 WL 114926 at *9 (Bankr. W.D. Tex. Jan. 9, 2008) (citing In re Fuel Oil Supply & Terminaling, Inc., 837 F. 2d 224, 230 (5th Cir. 1988)). The record does not support a finding that new value within the meaning of section 547(c)(4) was provided after the challenged transfers. The defense, therefore, is not available to shield the two challenged payments.

With respect to the "contemporaneous exchange" defense, Collarini must establish that the two challenged payments were "intended ... to be a contemporaneous exchange for new value" and were "in fact a substantially contemporaneous exchange...." 11 U.S.C. § 547(c)(1). The record does not support a finding that the payments involved a "substantially contemporaneous exchange." Accordingly, section 547(c)(1) does not provide a defense to Collarini based on the record.

-8-

**C.  Fraudulent Transfer Claims under Section 548 and Section 549.**

While the focus of trial and the pre-trial briefing was the Trustee's preference claim and Collarini's defenses to that claim, the Trustee's Complaint also asserts claims under 11 U.S.C. § 548 (fraudulent transfer) and 11 U.S.C. § 549 (post-petition transfers). With respect to his fraudulent transfer claim, the Trustee alleges that Saratoga received "less than reasonably equivalent value" for the challenged transfers. (Complaint at ¶21). The record does not support this element of the Trustee's section 548 claim.  Nor does this record support an allegation that the challenged transfers were made post-petition.  The Trustee, therefore, has not established these claims by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, the court finds in favor of Collarini on the Trustee's claims and orders that the Trustee take nothing on his claims. Collarini shall submit a judgment reflecting the court's ruling within 20 days.

###